**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. 09-30002-MAP |
| ) | |
| v. ) | |
| ) | |
| RICHARD DUCRAN, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING MEMO FOR**
**DEFENDANT RICHARD DUCRAN**

The United States of America, by and through Carmen M. Ortiz, United States Attorney for the District of Massachusetts, and Steven H. Breslow, Assistant United States Attorney, hereby files its Sentencing Memo For Defendant Richard Ducran.

I.   Introduction

On November 6, 2009, the defendant waived indictment and pleaded guilty to all counts of the above-captioned Superseding Information, which charged him with one count of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371 (Count One), three counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Counts Two through Four), and one count of attempted armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Count Five), all in connection with his 2007-2008 armed robberies of four separate banks in Massachusetts, Rhode Island, and New York.

Both the government and the defense agree that the defendant faces: (1) statutory maximum sentences of five years incarceration for Count One and twenty-five years incarceration for Counts Two through Five; (2) an advisory guidelines sentencing range of 78 to 97 months based upon Offense Level 28 and Criminal History Category I; (3) maximum supervised release terms of three years for

Count One and five years for Counts Two through Five; and (4) restitution in the amount of $268,998.95 payable to the four victim banks.  Presentence Investigation Report revised February 16, 2010 ("PSR"), ¶¶ 181, 182, 184, 187, and 198.[1]

The government recommends that the defendant be sentenced as follows: 97 months incarceration, five years of supervised release, restitution in the amount of $268,998.95 payable to the four victim banks, $500 special assessment, and no fine based upon the defendant's inability to pay a fine.  A sentence at the top of the guidelines range appropriately sanctions the defendant for his terrifying and dangerous crime spree.

II.     The Defendant Merits A Guidelines Sentence Of 97 Months Incarceration

   A.     Legal Principles

As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586, 596-97 (2007), the district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range, and then consider all of the factors in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested.  The district court may not presume that the Guidelines range is reasonable, but must make an individualized assessment based on the facts presented.  Id. at 597.

If the district court determines that a non-Guidelines sentence is warranted, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance."  Id.  Obviously, a major departure requires greater justification than a minor deviation.  Id.  The district court's explanation must allow for appropriate appellate review and promote the perception of a fair sentencing.  Id.

---

[1] The defendant's Total Offense Level is 30, but the government has agreed that it should be reduced two levels in exchange for the defendant's waiver of venue with respect to the robberies in Rhode Island and New York.  PSR ¶¶ 182, 184.

In this case, a Guidelines sentence best represents the statutory sentencing goals articulated in 18 U.S.C. § 3553(a). As the Supreme Court observed in Rita v. United States, 127 S.Ct. 2456, 2463 (2007), the sentencing judge and the Sentencing Commission are carrying out "the same basic 3553(a) objectives, the one at retail, the other at wholesale." In other words, the Sentencing Commission's guidelines are a "rough approximation of a sentence that might achieve § 3553(a)'s objectives." Id. at 2465. See Gall, 128 S.Ct. at 596 (stating "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark.").

B.   The Nature And Circumstances Of The Offense

The nature and circumstances of the offense require a Guidelines sentence, particularly given: (a) the danger posed by the defendant's misconduct; (b) the actual physical and emotional harm caused by the defendant; and (c) the repeated and lengthy nature of the defendant's crimes, which only ceased after the defendant was arrested while fleeing from the last bank robbery. See 18 U.S.C. § 3553(a)(1).

1.   Overview

As set forth below, between March 23, 2007 and May 3, 2008, the defendant and two co-conspirators, Tiashen Johnson and Dwayne Lewis, all engaged in the following four bank robberies, causing a total loss of $268,998.95:

| Date | Bank | Location | Loss |
|---|---|---|---|
| March 23, 2007 | Berkshire Bank | Chicopee, MA | $ 25,974.00 |
| June 30, 2007 | Sovereign Bank | Cranston, RI | $ 27,253.95 |
| July 28, 2007 | North Fork Bank | Deer Park, NY | $215,771.00 |
| May 3, 2008 | Bank of Western Mass. | Holyoke, MA | Zero - attempt |

For each of the robberies, all three men brandished pellet guns resembling authentic firearms, threatened to shoot bank employees, and wore hats and/or glasses that obscured their faces. In the Chicopee robbery, Lewis beat down a bank customer who attempted to flee, and in the Deer Park robbery, one bank employee was traumatized so severely that she cannot return to work. PSR ¶¶ 10-13.

### 2. The Chicopee Robbery

On March 23, 2007 at approximately 10:00 a.m., the defendant and his co-conspirators entered the Berkshire Bank branch located at 1339 Memorial Drive, Chicopee, MA. All three men dressed nicely in suits or suit jackets. They brandished pellet guns, announced the robbery, and directed people to either lie down on the floor or put their hands in the air. While the defendant and Lewis controlled the bank floor, Johnson extracted money from two tellers. The trio then exited the bank and escaped on foot with $25,974.00. During the robbery, a bank customer panicked and tried to run out of the bank. Lewis threw the customer to the ground, struck him on the face with his gun barrel, and threatened to shoot him if he tried to get up again. PSR ¶¶ 13-14, 19-20.

### 3. The Cranston Robbery

On June 30, 2007 at approximately 11:33 a.m., the defendant and his co-conspirators entered the Sovereign Bank branch located at 555 Reservoir Avenue, Cranston, RI. As before, Johnson approached the tellers while the defendant and Lewis controlled the bank floor, and all three brandished pellet guns. The three robbers escaped with $27,253.95. PSR ¶ 28.

One bank customer was about to leave the bank's front-door ATM machine with her five-year old nephew when one of the robbers, believed to be Lewis, ordered them back into the bank. The robber pointed a black handgun at her and her nephew, with his finger on the trigger, causing her to

fear that he would shoot her nephew. The bank's surveillance cameras depict Lewis and Ducran standing near a woman shielding a young boy who appears to be crying. Another bank customer stated that one of the robbers shouted, "Get down, get down! Everybody get down on the ground, don't look up or I'll blow your head off!" and he heard children crying and girls screaming throughout the robbery. PSR ¶¶ 38-40.

        4.        The Deer Park Robbery

On July 28, 2007 at approximately 9:42 a.m., the defendant and his co-conspirators entered the North Fork Bank branch located at 2087 Deer Park Avenue in Deer Park, New York. As before, the defendant and Lewis brandished pellet guns and patrolled the bank floor while Johnson obtained money at gunpoint from two tellers and the drive-through window operator. This time, Lewis also demanded access to the vault. Two employees accompanied Lewis and Johnson to the vault, while the defendant stepped forward and walked the bank floor, ordering everyone not to press any alarms. After Johnson and Lewis obtained money from the vault, the trio then left the bank with approximately $215,771.00. PSR ¶¶ 45-46.

One teller recalled that a robber, believed to be Lewis, pulled a gun from his waistband and screamed, "you know what this is fucking about!" and at one point threatened to shoot another bank employee. A second armed robber with a black bag (believed to be Johnson) then obtained money from three tellers. A third robber (believed to be the defendant) stood by the bank's main entrance door with what appeared to be a semi-automatic pistol. Since the robbery, the teller (who was similarly a gunpoint victim of an unrelated armed bank robbery in 2005) has been unable to return to work. An independent medical examiner concluded that she will likely never be able to work again in banking, where she had worked for the past eight years. According to her therapist, she suffers

from post-traumatic stress disorder. As a result, she cannot drive alone, becomes very afraid in crowds, and finds it difficult to enter any bank. PSR ¶¶ 53-55.

### 5. The Holyoke Attempted Robbery

On May 3, 2008, at approximately 9:30 a.m., the defendant and Johnson attempted to rob the Bank of Western Massachusetts ("BWM") located at 1515 Northampton Street, Holyoke MA while LEWIS waited outside in a getaway car. Brandishing the same pellet guns, the pair approached a teller and demanded money. The teller refused, and the defendant and Johnson fled the bank. Just minutes later and blocks away, they were both arrested on foot by members of the Holyoke Police Department ("HPD"). PSR ¶ 62.

According to one teller, one robber (believed to be Johnson) approached another teller, who then shouted "No, no!" The teller looked over and saw the man pointing a gun at the other teller, who was about a foot away from the gun. The gun was a black handgun with a circle of silver near the barrel. The other teller ran away, and then the man pointed the gun at the first teller and ordered her to open the drawer and give him the money. She opened the drawer, but hesitated, and the man racked the gun. She believed that the gun was real and was worried that the robber would shoot her. PSR ¶ 72-73.

The defendant's offenses warrant a sentence at the top of the guidelines range for the following reasons: (1) the crimes posed a very real risk of serious physical harm to many innocent bank customers and employees, as well as to the defendant and his co-conspirators; (2) at least two bank employees were actually harmed, either physically or emotionally; and (3) the defendant's crimes spanned approximately thirteen months, ranged over three states, and only ceased with his arrest while fleeing from the last robbery.

First, the defendant created the very real danger that someone - a bank employee, a bank customer, or even he and his co-conspirators - could have been physically injured and killed in the course of any of the armed robberies. As the Supreme Court observed in holding that even an unloaded gun is a dangerous weapon:

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.

McLaughlin v. United States, 476 U.S. 16, 17-18 (1986); see also United States v. Laughy, 886 F.2d 28, 29 (2d Cir. 1989) (holding for the same reasons that an inoperable pellet gun is a dangerous weapon).

Second, the defendant's crimes resulted in actual harm to at least two innocent bystanders - the bank customer in Chicopee who was beaten down and struck in the face by a pistol after he tried to flee, and the terrified bank employee in Deer Park who was rendered unable to return to work and dramatically limited in her social functioning, such that she finds it difficult even to enter a bank for any purpose.

Lastly, the defendant's crimes were not a simple mistake in judgment, but rather a willful and deliberate course of conduct that spanned approximately thirteen months, ranged over three different states, and ended only after the defendant was arrested while fleeing from the last robbery. Thus, it seem clear that, had he evaded the HPD, the defendant would surely have continued the armed robbery spree until his eventual capture.

C.   History And Characteristics Of The Defendant

The personal characteristics of the defendant weigh in favor of the requested Guidelines sentence. See 18 U.S.C. § 3553(a)(1). The defendant was "raised in an emotionally and financially secure environment" by "strict" parents. PSR ¶ 156. He is surrounded by a large and productive family that includes his father (a retired electrical engineer and insurance salesman), his mother (a home health aide), and three brothers (one works in construction and another is student athlete at a community college). PSR ¶¶ 158-62. The defendant has no children whom he needed to support. PSR ¶ 164. He is in good physical condition with no serious ailments. PSR ¶ 167. Until his arrest, the defendant had never received mental health treatment and currently does not feel the need for such treatment in the future. PSR ¶ 168. He has no substance abuse history, and is only a social drinker. PSR ¶ 169. He graduated high school and in 2001-02 attended community college. PSR ¶ 170. He has "extensive experience" in various productive trades, including construction, carpentry, roofing, heating, electrical, and plumbing, as well as other experience in electronics, computer assembly, and computer programming. Id. From 1997 to 2007, the defendant worked for an uncle's construction and landscaping company. PSR ¶ 173. The defendant has no liabilities. PSR ¶ 176.

In short, nothing in the defendant's personal history or circumstances warrants a sentence outside the guidelines range. Indeed, the lure of easy money appears to be the only reason for committing such a brazen and dangerous crime spree.

D.   The Need for the Sentence Imposed

A guidelines sentence is needed to afford "adequate deterrence to criminal conduct" and "protect the public from futher crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C). The defendant's long-term misconduct shows that he behaved without regard for the rule of law or

the safety of dozens of innocent bank employees and bank customers, one as young as five years old, who were the victims of his crimes, making him a high risk to offend again - particularly since the defendant's repeated crimes were committed without any mitigating personal factor that would explain why the defendant would engage in such dangerous behavior.

Lastly, a Guidelines sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Here, a Guidelines sentence of 97 months will reflect the seriousness of the armed bank robbery, provide respect for Congress's intent to penalize dangerous offenders severely, and justly punish the defendant for the harm that he caused the banks and the dozens of innocent men, women, and children who happened to cross his path.

III.   Conclusion

For the foregoing reasons, the Government respectfully asks that the Court impose a sentence of 97 months incarceration, five years of supervised release, restitution in the amount of $268,998.95 payable to the four victim banks, and no fine based upon the defendant's inability to pay a fine.

Filed this 19th day of February, 2010.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              United States Attorney


                                /s/ Steven H. Breslow
                              STEVEN H. BRESLOW
                              Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                                Springfield, Massachusetts
                                            February 19, 2010

    I, Steven H. Breslow, Assistant U.S. Attorney, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


          /s/ Steven H. Breslow
      STEVEN H. BRESLOW
      Assistant United States Attorney